HAROLD MORRIS & another[1] vs. JAMES M. HOLT & another.[2]

Bristol.  December 5, 1979. — March 11, 1980.

Present: HENNESSEY, C.J., QUIRICO, WILKINS, LIACOS, & ABRAMS, JJ.

*Negligence,* Installation of septic system.

In an action by the purchasers of a house which once had been owned
    by the defendants, there was sufficient evidence to warrant findings
    that the defendants knew that they had constructed an addition to the
    house over a cesspool, that they acted unreasonably in so constructing
    the addition, and that the plaintiffs' plumbing problems, the obnox-
    ious odors in the house, and the need to build a new sanitary disposal
    system in compliance with the sanitary code were foreseeable conse-
    quences of the defendants' negligence. [135-136]

TORT.  Writ in the Fourth District Court of Bristol dated
November 15, 1974.

Upon transfer to the Superior Court the case was tried
before *Taveira,* J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*James Goldberg* for the defendants.

*Henry G. Barrett* for the plaintiffs.

WILKINS, J.  The plaintiffs purchased a house in Attle-
boro which once had been owned by the defendants.  While
the defendants owned the house, they negligently con-
structed an addition to it by placing the addition over a cess-
pool.  The plaintiffs sustained damage to their property as a
result of the negligent construction.  We hold that the plain-
tiffs, who purchased the property from the defendants'
grantee, are entitled to recover from the defendants in these

---

[1] His wife, Ethel Morris.

[2] His wife, Helen F. Holt.

circumstances, and we affirm the judgment entered after a jury verdict in the plaintiffs' favor. We transferred the defendants' appeal here on our own motion.

The defendants argue that their motion for a directed verdict should have been allowed.[3] We summarize the evidence most favorable to the plaintiffs. Originally, a building for commercial use was constructed on the property, and a cesspool to serve the building was installed in 1938. The defendants, who had their home on an abutting lot, acquired the property from one Pinder in 1969, and shortly thereafter undertook to convert the building for use as a single family residence. One of the alterations was the addition of a room, ten feet by sixteen feet. Pinder had told the defendant James H. Holt (Holt) that the cesspool was sixteen feet from the house and that Holt should not construct his proposed addition that close to the cesspool. Holt performed or supervised the construction work himself and built a cement supporting wall for the addition. He testified that he knew that a corner of the addition was "sort of over the cesspool." Mrs. Morris testified that Holt told her that he had put the concrete blocks in the foundation and had "found out the septic system was inside." The State Sanitary Code required that a cesspool be twenty feet from a dwelling unit. Although plumbing work was done inside the house by a licensed plumber, he gave no consideration to the location of the sewage disposal system. In fact, the cesspool was under the addition, inside its foundation walls. The jury would have been warranted in finding that Holt did not obtain a building permit for the addition.

In April, 1971, the defendants sold the property to one Budjinski, who lived in the house until shortly before he sold it to the plaintiffs in June, 1973. The plaintiffs encountered problems with sewage disposal and smelled unpleasant odors which continued in greater or lesser intensity depending on weather conditions. They also had certain water problems

---

[3] The defendants also moved for judgment notwithstanding the verdict and for a new trial. These motions raise no separate issue.

in the cellar.[4]  In May, 1974, the plaintiffs consulted a "registered sanitarian" (see G. L. c. 112, §§ 87LL - 87OO), who discovered the basement toilet backed up and also a pool of water and methane gas in the closed crawl space under the addition.  He found the cesspool, which was a hole in the ground about six feet deep and three or three and one-half feet around, located under the addition.  The vertical walls of the hole were covered with a slime similar to that found in a dead septic system.  As a city health agent, he found that the building was unfit for human habitation and ordered that a lawful sanitary disposal system would have to be installed within seven days or the house would be condemned for human habitation.  The plaintiffs installed a new septic system at a cost of $1,500.

There is no serious question that Holt was negligent in the construction of the addition over the cesspool.  That construction was a violation of the sanitary code, which the defendants concede is itself some evidence of negligence.  See *LaClair* v. *Silberline Mfg. Co.*, 379 Mass. 21, 27-28 (1979).  The jury could reasonably infer that Holt knew the addition was constructed over the cesspool and that he acted unreasonably in so constructing the addition.[5]  Additionally, the

---

[4] The plaintiffs' case against the defendants was tried together with a case against Budjinski and the two real estate brokers who had handled the sale to the plaintiffs.  That case involved a separate claim for damages due to the water conditions discovered in the cellar.  Certain evidence at the trial related to that claim and was admissible only for the purposes of that case.  On appeal, the defendants challenge the admission of certain testimony by an expert who testified for the plaintiffs, but the defendants did not properly preserve their right to do so.  They sought no limiting instructions from the judge at the time of its admission, nor did they request instructions to the jury concerning that evidence or object to the judge's charge in this respect.

Because the sewerage problem did not arise until after the plaintiffs acquired the property, we need not consider how the rights of the various parties would have been affected if that problem had been a factor in any of their dealings.  See *McDonough* v. *Whalen*, 365 Mass. 506, 512 n.8 (1974).

[5] Because Holt did the work himself and did not rely on an independent contractor in the construction of the addition, we need not consider

plaintiffs' plumbing problems, the obnoxious odors in the house, and the need to build a new system in compliance with the sanitary code were foreseeable consequences of that negligence.[6]

The fact that the plaintiffs and Holt had no contractual relationship does not aid the defendants. In *McDonough* v. *Whalen*, 365 Mass. 506 (1974), we rejected any requirement of privity in a similar (but not identical) situation and upheld the right of the purchaser of a new house to recover for the consequences of the negligence of both the designer and the installer of a septic system on the plaintiffs' premises. *Id.* at 510-512. See generally Annot., 25 A.L.R.3d 383, 399-402 (1969). We found no sound reason to treat a builder of houses or other realty structures differently from a manufacturer of chattels. *McDonough* v. *Whalen, supra* at 511. We held that a contractual relationship was not essential to the establishment of liability for foreseeable harm to the property or injury to persons living on or using the premises. *Id.* at 512. The principle of the *McDonough* case is controlling here, and thus it makes no difference that the plaintiffs were remote, rather than immediate, purchasers of the property once owned by the defendants.

*Judgment affirmed.*

---

whether a landowner can be held responsible when such a negligent act is performed by a person to whom the landowner reasonably entrusted the entire task.

[6] No question as to the statute of limitations is presented here. General Laws c. 260, § 2B, as amended by St. 1973, c. 777, § 2, reads as follows: "Actions of tort for damages arising out of any deficiency or neglect in the design, planning, construction or general administration of an improvement to real property shall be commenced only within three years next after the cause of action accrues; provided, however, that in no event shall such actions be commenced more than six years after the performance or furnishing of such design, planning, construction or general administration."