Dohoney, J.
This is an action wherein the plaintiff s seek damages for breach of implied warranty, negligence, misrepresentation and violation of General Laws, Chapter 93A. The findings of the Trial Justice indicate the following background.
On April 15, 1978, the plaintiffs entered into a written agreement for the purchase of certain real estate at #25 Forest Road in Belchertown, Massachusetts from First Old Colony Builders, Inc., hereinafter referred to as “Seller”, and for the construction of a dwelling on said premises, as more particularly described in said agreement. The agreement further provided for the installation of a septic system with the provision that the Seller will “guarantee the construction and workmanship of the house for one (1) full year from date of closing” and “seller shall. .. comply with all local building codes and shall keep the buyers and brokers indemnified against all fines, penalties, and losses incurred by reason of this stipulation”. The agreement was to be performed on or before August 14,1978 and construction took place during the summer of 1978.
The defendant Philip Moss, hereinafter referred to as “Moss”, was employed by the Seller and at the direction of the Seller signed the application for a Disposal Works Construction Permit by the Seller for authority to install a septic system in connection with the construction of this dwelling. Attached to the application were plans showing the detail of the system and its location on the easterly side of the dwelling, which were drawn by Harold Mellin, a civil engineer, now deceased. The application was approved on June 10, 1978 by James A. Bonafini, on behalf of the Belchertown Board of Health. Moss then, at the direction of the Seller, installed the septic system on the west side of the dwelling, although the plan attached to the application showed the system on the east side of the dwelling. There was no evidence presented at the hearings *152 as to whether Moss installed the system according to the plans, other than its location relative to the dwelling. On August 29,1978, Mr. Bonafini, on behalf of the Belchertown Board of Health, certified that the installation of the system was in accordance with the provisions of Title 5 of The State Sanitary Code as described in the application of Disposal Works Construction Permit. This approval was made after the installation of the system and before it was filled
The real estate closing took place in September of 1978 and the plaintiffs and their family took occupancy of the completed dwelling. In March of 1979, the plaintiffs noticed a black fluid with a sewage type of odor oozing from the ground near the leach field of the septic system. The situation worsened.
During the week of April 19, 1979, Moss visited the premises, observed the problem and conferred with the plaintiffs. Moss suggested that a fifth trench in the leach field might solve the problem, and at the direction of the Seller, Moss installed a fifth trench on May 15,1979 with materials furnished by the Seller. The problem abated until September of 1979 when the blackfluid reappeared. The plaintiffs called Mr. Dudek and Mr. Bonafini of the Belchertown Board of Health who observed the condition. The plaintiffs wrote a letter to the Seller but received no reply.
The condition worsened and the plaintiffs hired John A. O’Keefe, a civil engineer, in November of 1979 who surveyed the premises and drew up a plan for a new septic system. O’Keefe discovered that the tank and leach field were not located as shown on the Millin plan. The Belchertown Board of Health approved the new plan but could not approve the new application for a Disposal Works Construction Permit as drainage easements had been created since the construction of the dwelling on both sides of the house. In February of 1980, the Town of Belchertown, at a special town meeting, removed the drainage easement on the east side of the house, the new application for a Disposal Works Construction Permit was approved by the Belchertown Board of Health in May of 1980 and a new septic system was installed in June of 1980. The plaintiffs expended a total sum of $6,000.57 for this new system, which included a charge of $1,100.00 for the O’Keefe survey and plan. The new system has operated properly since that time.
The Trial Justice found that the defendant did not breach any implied warranty, that he was not negligent, that he was not liable for misrepresentation, and that he did not engage in unfair or deceptive practices.The plaintiffs filed certain Requests for Rulings of Law which were denied.
An analysis of the respective claims of the defendant indicate that the findings for the defendant were warranted.
Breach of Implied Warranty. The Trial Justice found no breach of implied warranty on the basis that Moss was an employee of the Seller and had no contractual relationship with the plaintiff. The plaintiffs take exception to this and have cited strong authority to us that a direct contractual relationship is not necessary for recovery. Massachusetts was one of the leading jurisdictions in imposing liability in tort on manufacturers or suppliers of chattels when they were negligently made despite lack of privity. See Carter vs. Yardley, Ltd., 319 Mass. 92 (1946). However, the rule had been different with respect to allegedly negligent construction work. In Cunningham vs. T.A. Gillespie, Co., 241 Mass. 280 (1922) the Supreme Judicial Court refused to *153 assess similar liability against such a building contractor. However, in McDonough vs. Whalen, 365 Mass. 506 (1974) this rule was expressly abolished and the Court stated
We therefore hold that a builder or contractor may be liable for injuries or damage caused by his negligence to persons with whom he has no contractual relation and even though his work is completed and accepted by the owner before the injuries or damage occurred. Liability will be imposed, however, only if it is forseeable that the contractor’s work, if negligently done, may cause damage to the property or injury to persons living on or using the premises.
The McDonough case is particularly interesting in that it involved the installation of a septic system by defendants who were never the owners of the property and had no connection with the plaintiffs. Similarly, in Morris vs. Holt, 380 Mass. 133 (1980) the defendants were the owners of certain property and built an addition over a cesspool. The plaintiffs purchased the property from the grantee of the defendants. The Court had no difficulty in finding the defendants liable saying
The fact that the plaintiffs and Holt had no contractual relationship does not aid the defendants. In McDonough v. Whalen, 365 Mass. 506 (1975), we rejected any requirement of privity in a similar (but not identical) situation and upheld the right of the purchaser of a new house to recover for the consequences of the negligence of both the designer and the installer of a septic system on the plaintiffs’ premises. Id. at 510-512. See generally Annot., 25 A.L.R.3d 383, 399-402 (1969). We found no sound reason to treat a builder of houses or other realty structures differently from a manufacturer of chattels. McDonough vs. Whalen, supra at 511. We held that a contractual relationship was not essential to the establishment of liability for foreseeable harm to the property or injury to persons living on or using the premises. Id. at 512. The principle of the McDonough case is controlling here, and thus it makes no difference that the plaintiffs were remote, rather than immediate, purchasers of the property once owned by the defendants.
Therefore, the fact that there was no contractual relationship between the plaintiffs and the defendant is not a bar to recovery. However, the fact that the defendant was an employee of the Seller is important in determining if an implied warranty was ever given. Plaintiffs have cited no case for the proposition that an employee gives an implied warranty with respect to his labors. By analogy to the area of law involving the implied warranties concerning chattels, General Laws, Chapter 106, Section 2-314 relative to the implied warranty of merchantability requires the seller to be a “merchant” with respect to the chattels. General Laws, Chapter 106, Section 2-315 relative to the implied warranty of fitness for a particular purpose refers to the “seller.” Indeed, it would be a distortion of the realities of the marketplace to require a laborer to be subject to suit for a breach of implied warranty for work done at the specific direction of his employer.
With respect to the breach of implied warranty claim, the plaintiffs submitted the following Requests for Rulings.
*154 7. There is no good reason to treat a contractor on realty differently from a manufacturer of chattels, respecting his duties to those injured by his conduct, consequently, the defendant is liable pursuant to the strict liability remedy of G.L. cl06 §-314.
cf. Morris v. Holt, 380 Mass. 133,136 (1980);
Reynolds v. Preferred Mutual Ins. Co.,
49 Mass. App. Dec. 97, 107 (1972);
Swartz v. General Motor Corp., 375 Mass. 628 (1978).
8. The septic system installed by the defendant would not pass without objection in the trade and is not merchantable.
As can be seen these rulings imply that the defendant is a “seller” or a “merchant.” Since this is not true the rulings are inapplicable and were properly denied.
Negligence-. As we have seen there is no barrier to establishing a negligence claim against the defendant. However, in this case, the Trial Justice has found that there was no negligence on the part of the defendant. This finding was based on the lack of evidence as to the causation of the malfunction. Here the Report contains no evidence as to why the system failed. We know that it apparently worked properly when it was relocated. However, this certainly is not sufficient evidence to establish that the location was the cause of the malfunction. There were innumerable other factors which would be remedied by a relocation, but which would not be proof that the location was the cause. It is elementary to state that the plaintiff has the burden of establishing 1) duty, 2) breach 3) caustion, and 4) damage to establish a negligence claim. SEE NOLAN, TORT LAW, MASS PRACT. SERIES, Vol. 37; Section 171. Here the Trial Justice was well warranted in concluding that the Plaintiff had faded to establish causation. Therefore, we must uphold his action. See Ed Herrington, Inc. v. Clark, 1985 Mass. App. Div. 18.
The plaintiffs filed the following Requests for Rulings of Law with respect to their negligence claim.
1. The plaintiffs are entitled to recover for injury to their property where the defendant, (Moss) was negligent with respect to the installation of the septic system and where the damages suffered were causally related to such negligence.
McDonough v. Whalen,
365 Mass. 506, 514 (1974)
2. The defendant’s failure to install the septic system in compliance with the state sanitary code, constitutes evidence of his negligence.
McDonough v. Whalen,
365 Mass. 506, 515-515 (1974)
3.The location and installation of each individual sewerage disposal system, or other means of disposal, shall be such that with responsible maintenance it will function in a satisfactory manner and will not create a nuisance of discharge into any watercourse of the *155 Commonwealth.
Title V, Mass. Environmental (Sanitary) Code
310 Code of Mass. Regs. §15.03 (1)
6. The defendant’s violation of 310 Code Mass. Regs. §15.03 (1) and (7) and §15.02 (2) constitutes evidence of his negligence.
9. By entering into a contract with A, the defendant may place himself in such a relationship with B that the law will impose upon him an obligation, sounding in tort and not in contract to act in such a way that B will not be injured.
Carter v. Yardley & Co., 319 Mass. 92, 96-97 (1946);
Rae v. Air-Speed, Inc., 386 Mass. 187, 192-193 (1982);
These requests were all denied by the Trial Justice and properly so since they are not applicable to the facts found by the Trial Justice. We should also comment on the action of the Trial Justice in handling Request for RulingNos. 2 and 3. These requests in effect state that the failure to install the septic system in compliance with the state sanitary code constitutes evidence of negligence. The Trial Justice denied these Requests. Of course, as a matter of law, these are correct statements. See LaClair v. Silberline Mfg. Co., 379 Mass. 21 (1979). However, in the context of this case, there was no evidence to show that this failure was the cause of the malfunction. Thus the action on the Requests was not prejudicial. See First Safety Fund National Bank v. Friel, 1986 Mass. App. Div. 45.
Misrepresentation: There appears to be some confusion as to the claim for misrepresentation. The findings of the Trial Justice indicate that he felt the claim was based upon the matters involving the addition of the trench to the system. At oral argument, however, the plaintiffs asserted that the misrepresentation was based upon the execution of the Application for the Disposal Works Construction Permit wherein the defendant signed and which indicated that the septic system was to be installed on the easterly side of the house. It is possible that such a statement can amount to a misrepresentation. See Barrett Associates, Inc. v. Aronson, 346 Mass. 150 (1963) as to whether a statement is promissory in nature or a statement of present intent.
In any event there is no evidence of any reliance on this statement. In fact, there is no evidence in the Report that the plaintiffs were even aware of the statement at the time they purchased the home. See Vacini v. Whitaker, 1984 Mass. App. Div. 49.
Chapter 93A: The Trial Justice found that the defendant did not engage in any unfair or deceptive practices pursuant to said statute. The plaintiffs based their claim for a violation of General Laws, Chapter 93A upon a breach of implied warranty and a breach of express warranty. As to the express warranty, plaintiff relies on the statement in the application signed by the defendant. However, there is no evidence in the Report to indicate that the plaintiffs ever relied or even were aware of the statement at the time they purchased the premises. Once again, it is essential that the unfair or deceptive practice be the cause of the damage. Atwood v. Best Buick, Inc., 21 Mass. App. Ct. 70 (1985).
The plaintiffs filed the following Requests for Rulings of Law with respect to the Chapter 93A claim.
10. The defendant has violated G.L. c.93A and applicable regulations which provide generally that no claim or representation shall be *156 made by any means concerning a product [or service, see 940 CMR 3.01 (17) ] which has the capacity or tendency or effect of deceiving buyers or prospective buyer of a product (a service)
940 CMR 3.05(2)
11. The defendant has violated 940 CMR §3.08 (2) and 3.16.
In view of the facts found by the Trial Justice, they were properly denied since there was no causation.
Having found no error, the Report is hereby dismissed.